**J & F HARIG CO v FOUNTAIN SQUARE BUILDING, INC et**

Ohio Appeals, 1st Dist, Hamilton Co

Decided March 20, 1933

Pogue, Hoffheimer & Pogue, Cincinnati, R. H. French, John A. Scanlon, Cincinnati, and Edwin G. Becker, Cincinnati, for plaintiff.

C. C. Benedict, Cincinnati, Maxwell & Ramsey, Cincinnati, Wm. J. Rielly, Cincinnati, Ragland, Dixon & Murphy, Cincinnati. Arthur H. Fix, Cincinnati, Ireton & Schoenle, Cincinnati, Phineas S. Phillips, Cincinnati, and F. E. Burnett, Cincinnati, for defendants.

## OPINION

By HAMILTON, PJ.

The validity of the bonds is not in question, but it is contended by the Harig Company that its lien is a prior lien and senior to the mortgage bonds.

If the liens claimed are valid, they are senior to the other liens.

We will first consider the claim of The M. H. Crane Company. The Crane Company did not prosecute error or appeal from the decision of the Court of Common Pleas. It claims the right to have its lien considered by this court under the general rule that an appeal brings the whole case before the appellate court. In other words, can the Crane Company inject its interest into the appeal perfected by The Fifth-Third Union Trust Company?

Sec 12231, GC, provides: "When the interest of a party is separate and distinct from that of all others in the suit, and he desires to appeal his part of it, it shall be so allowed by the court, and the penalty and bond fixed accordingly. The court also shall make such order as to the papers and pleadings, and supply copies thereof, and in all other respects, as it deems right in view of a division of the case for an appeal."

Under the authority of the Code, The Fifth-Third Union Trust Company perfected an appeal from the decision finding the Harig Company's mechanic's lien to be a

valid lien and superior in priority to the mortgage bonds of The Fifth-Third Union Trust Company. This was a distinct and separate issue clearly defined, and the right to separate appeal is within the Code provision.

Had the Fifth-Third Bank not perfected an appeal, it could not be claimed that The M. H. Crane Company could have any right to consideration on appeal in this court, since it did not perfect an appeal in its own behalf.

Our conclusion is that the claim of The M. H. Crane Company cannot be considered by this court in this action; it not having perfected any appeal or properly prosecuted error in its own behalf.

If the claim of The M. H. Crane Company could be considered by this court, the lien could not be upheld, since the facts bring the case within the decision by this court in **Frisch v Ammon, 34 Oh Ap, 447,** 171 NE, 247, (8 Abs 158). The affidavit of the Crane Company for a lien recites "all materials taken from stock." The future delivery contract made by the Crane Company with the U. S. Radiator Corporation recites that the "above materials would be installed in office building located, Fifth and Walnut Streets, Owner, The Fountain Square Realty Company." The goods were shipped, and the following is noted in the shipping bill: "Special Instruction: Mark 101 Fountain Square Building." Sufficient has been said to show that the purchase was not on an open account, but for specific purpose and use at the Fountain Square Building Company, and was not furnished by Crane Company out of stock.

It follows that the Crane Company's lien is not a valid lien, and it would have to be so found if the case were here for consideration.

We next consider the lien of The J. & F. Harig Company.

On August 29, 1927, the Fountain Square Building Company made three contracts with The J. & F. Harig Company, on three separate writings. One of the contracts was for the excavation and concrete work, at a bid price of $87,936. It provided the work should proceed as rapidly as possible, cooperating with other work in construction of the building, and provided unit prices for extras and reductions.

Another of the three contracts was for the lath and plaster work, at a bid price of $25,291, with the same conditions as to going forward with the work and unit prices.

Another one of the three contracts cover-ed the structural steel work at a bid price of $12,000, and contained the same provisions as to going forward with the work, and the unit prices.

On January 24, 1928, a separate contract was entered into between The J. & F. Harig Company and the Fountain Square Building Company for the carpenter work, at a bid price of $6,113 with like conditions as to completion and unit prices.

It may be well to state here that the claim is that the mechanic's lien was not filed within the 60-day period from the date of the last work or the furnishing of the last material, and that but one affidavit was filed.

The lien claimants maintain that, while they were separate contracts, they were for the construction of one building, made the same date, and should be considered as one contract.

It is claimed by the appellant, The Fifth-Third Union Trust Company, that these are all separate contracts, and that the time for filing the liens could not be tolled by the tacking together of these separate contracts; that a separate affidavit was necessary on each contract.

We do not find it necessary to discuss all phases of the questions involved at length in this opinion. To do so would make the opinion unnecessarily long.

The Harig Company's lien was filed July 20, 1929.

We do not find it necessary to consider whether the three contracts entered into August 29, 1927, constituted one contract for the reason that they concern one building and were entered into at the same time.

The record discloses that the work under these three contracts was completed long prior to the lapsing of the time for filing the lien.

There is some attempt to connect up some of the work under these contracts, bringing it down to a later day. But the evidence shows that the work under these contracts was considered as completed by the contracting parties. It is in evidence that a long time prior to the 60-day limit the architect issued, and the Harig Company received, a certificate that the work under those contracts was complete, and some of the contracts paid for in full.

The contract of January 24, 1928, must be considered as a separate contract for the carpenter work. It could only be properly attacked from the standpoint that it concerned the same building. Had this contract been made, say with A, instead of the Harig Company, no one would question

that it could not be tacked to the other contracts, but would require a separate affidavit by A in order to perfect a lien. The mere fact that it happened to be the Harig Company instead of A would not change the rule of law, and would require a separate affidavit in order to perfect the lien.

Our conclusion is that no lien could be had under these four contracts.

It appears that, when the contracts for the building were entered into, the Fountain Square Building Company desired to reserve the finishing of offices. This was primarily an office building, fourteen stories, with business rooms on the first floor. They desired to do this in order to satisfy certain prospective tenants or lessees of office rooms as to the arrangement and accommodation. Pursuant to this desire, on December 12, 1928, The J. & F. Harig Company submitted unit prices for the work of finishing the offices and other inside work. These prices were accepted by the Fountain Square Building Company on the same date, December 12, 1928. The acceptance provided: "Work to be done as we direct in the preparation of offices in the above mentioned building."

Pursuant to these unit prices, twenty-two orders were given to proceed with work in the offices and in the interior of the building. These orders were given in the following form: "We hereby authorize you to proceed with the work necessary for preparation of offices (designating the office to be finished and referring to sheet specifications). This work to be billed at your unit prices."

There were partitions to be made in the different offices on different floors, and this was ordered done at the unit prices.

The evidence discloses that the last of the work done in the completion and preparation of these offices was during the latter part of May, 1929, and the forepart of June, 1929; that substantial work was done at this time in finishing up the offices and making partitions under the unit price contract. The lien, as heretofore stated, was filed July 20, 1929, which was within the 60-day limitation from the date on which the last work was done or materials furnished in the completion of offices at unit prices.

Our conclusion is that there is a valid lien for the work, labor, and materials furnished for the completion of the offices and the inside work at the unit prices agreed upon and that the claim of the appellant that each of the office floors was a separate contract is not tenable.

The lien will be held good for the amount involved, under and by virtue of the unit price agreement under the contract for furnishing the inside work.

A decree may be prepared, with calculations for the amount due for this work.

Decree accordingly.

CUSHING and ROSS, JJ, concur.