DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from two judgments of the Fulton County Court of Common Pleas. The first appeal is from the trial court's denial of appellant's motion for summary judgment on appellees' claim for damages for slander of title. The second is from a jury verdict in favor of appellees that awarded compensatory and punitive damages as well as attorney fees.
 {¶ 2} Appellant Windows and Doors Showcase, LLC ("appellant") sets forth the following assignments of error:
 {¶ 3} "A. The trial court erred in denying Appellant's Motion for Summary Judgment.
 {¶ 4} "B. The trial court erred in denying Appellant's Motion for Directed Verdict and Judgment NOV.
 {¶ 5} "C. The trial court erred in refusing to order remittitur.
 {¶ 6} "D. The trial court erred because the verdict was not supported by the manifest weight of the evidence.
 {¶ 7} "E. The trial court erred by allowing Mr. Mrs. Gilson to file a Supplemental Complaint."
 {¶ 8} The undisputed facts relevant to the issues raised on appeal are as follows. In February 2003, appellees Bruce and Kay Gilson contracted with Michael Madden of Madden Sons, LLC ("Madden") for construction of a home in Swanton, Ohio. Madden then contracted with appellant to provide windows and doors for the home. Appellees did not know where Madden purchased the windows and doors. Madden placed three separate orders with appellant in June and August 2003. Madden also paid appellant $20.00 to store the window screens and muntins ("screens") until construction was completed. In April 2004, Madden filed for bankruptcy. The screens had not been delivered at that time. Prior to the bankruptcy filing, appellees had distributed to Madden, through their bank, all draws for the windows and doors. However, Madden never paid appellant for the items ordered.
 {¶ 9} Because the screens were never delivered, Kay Gilson eventually contacted the manufacturer (Pella Windows) to inquire about purchasing the screens they needed. Gilson testified that this was six months after the last of the windows had been delivered to the home. Pella referred Gilson to appellant, a local distributor for their products. Gilson called appellant and was told by an employee that they might have her screens in storage but that Madden had not paid for them. Gilson testified at trial that the employee said she would check and call her back. On February 18, 2004, a few days after Gilson called appellant, the screens were delivered.
 {¶ 10} On March 3, 2004, appellant recorded an Affidavit of Lien on appellees' property for $10,625.58 for material furnished pursuant to the contract with Madden. On March 10, 2004, appellees demanded release of the lien, which they asserted had been filed out of time. On May 19, 2004, appellees filed a complaint alleging appellant had recorded the lien too late. Appellees claimed that, in order to be timely, the lien should have been recorded after the windows and doors were delivered in the summer of 2003, rather than after the screens were delivered in February 2004. On June 18, 2004, appellant filed an answer and counterclaim seeking foreclosure on the lien. Shortly thereafter, appellees voluntarily paid the lien amount in full. Appellant released the lien on August 9, 2004, and dismissed the counterclaim on August 20, 2004.
 {¶ 11} On February 2, 2005, appellant filed a motion for summary judgment. In its motion, appellant asserted it was entitled to summary judgment on the slander of title claim because there was no evidence the company filed the lien maliciously or with reckless or wanton disregard of its falsity and because the lien was properly and timely filed. On March 24, 2005, appellees filed a memorandum in opposition to summary judgment and a motion to file a supplemental complaint, instanter. In support of their motion, appellees asserted that they were forced to pay off the lien in order to mitigate financial pressures, public embarrassment and other damages.
 {¶ 12} On April 5, 2005, the trial court denied appellant's motion for summary judgment. It also granted appellees leave to file a supplemental complaint. That same day, appellees filed their complaint with additional causes of action for fraud and negligence.
 {¶ 13} On May 12, 2005, the case came to trial before a jury. On May 16, 2005, the jury rendered a verdict in favor of appellees, awarding $15,499.69 in compensatory damages, $9,911.71 in punitive damages and unspecified attorney fees.
 {¶ 14} On June 6, 2005, appellant filed a motion for judgment notwithstanding the verdict, remittitur or a new trial. On June 13, 2005, the trial court denied all requests contained in the motion.
 {¶ 15} A separate hearing was held on the issue of attorney fees and by judgment entry filed August 11, 2005, the trial court awarded appellees $45,020.56 plus pre- and post-judgment interest.
 {¶ 16} In its first assignment of error, appellant asserts the trial court erred in denying its motion for summary judgment. Appellant argues that affidavits and other documents submitted show that the screens were delivered on February 18, 2004, and the mechanic's lien was recorded on March 3, 2004, well within the 60-day limit set forth in R.C. 1311.06(B)(1). Appellant further argues there was no evidence it filed the lien maliciously or with reckless or wanton disregard of its falsity.
 {¶ 17} An appellate court must employ a de novo standard of review of the trial court's summary judgment decision, applying the same standard used by the trial court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129; Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 18} R.C. 1311.06(B)(1) mandates that a lien arising in connection with a residential unit be filed "within sixty days from the date on which the last labor or work was performed or material was furnished by the person claiming the lien * * *." Liens filed more than 60 days after the completion of work will be deemed invalid. J. F. Harig Co. v. Fountain Square Bldg.
(1933), 46 Ohio App. 157.
 {¶ 19} It is undisputed that appellant delivered the screens on February 18, 2004. The windows and doors had been delivered in the summer of 2003. Appellant asserts that delivery of the screens in February 2004 restarted the statutory 60-day time period. Appellees assert that delivery of the screens was delivery of immaterial/inconsequential materials and therefore not sufficient to extend the expired time limit for recording a lien in this situation. They further assert that a genuine question of fact existed as to whether delivery of the screens to their house seven months after the doors and windows were installed restarted the expired lien time under R.C.1311.06(B)(1).
 {¶ 20} Upon consideration of several affidavits and other information before the trial court, we find that genuine issues of material fact existed. Slander of title is a tort action which may be "`brought against anyone who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss.'"Buehrer v. Provident Mut. Life Ins. Co. of Philadelphia (1930),37 Ohio App. 250, 256. Appellees claim appellant "defamed" their property. Karen Gilson stated in her affidavit that after the lien was recorded they were unable to convert their construction loan into permanent financing, were threatened with foreclosure, and had to pay higher closing costs and accept a higher interest rate on their mortgage. There clearly was a question of fact as to whether appellees suffered pecuniary damage or loss as a result of the filing of the lien. There also was a question of fact as to whether appellant delivered the screens in February 2004, over six months after delivering the windows and doors, solely to extend the deadline for recording a lien. Appellant asserted it did not hold back the screens in the hope that it would later be able to collect from the homeowners by recording a lien. Clearly, there was a question of fact in this regard. Whether the materials furnished were necessary to properly complete the work in good faith and perform the contract, or merely an effort to extend the time for filing an affidavit for a lien, "is always a question of fact." Walter v. Brothers
(1932), 42 Ohio App. 15, 18; Seybold v. Pitz (1955),101 Ohio App. 316. Further, we note that whether a party acts in good faith is a question generally left to the trier of fact. Straussv. Doe, 11th Dist. No. 2003-L-082, 2004-Ohio-5316. For these reasons, we find the trial court did not err by denying the motion for summary judgment filed by appellant, and the company's first assignment of error is not well-taken.
 {¶ 21} In order to address the issues raised on appeal chronologically, we will consider appellant's fifth assignment of error, in which it asserts the trial court erred by allowing appellees to file a supplemental complaint. Appellant argues the supplemental complaint should not have been allowed because it asserted new causes of action for fraud and negligence. The acts of fraud and negligence were not alleged to have occurred after the original complaint was filed.
 {¶ 22} Civ.R. 15(E) states:
 {¶ 23} "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. * * *"
 {¶ 24} A trial court's decision whether to grant leave to file a supplemental pleading will not be disturbed on appeal absent an abuse of discretion. See Civ.R. 15(E); Mork v. WaltkoTruck Equipment Co. (1990), 70 Ohio App. 3d 458, 461. An abuse of discretion connotes more than an error of law or judgment; it implies the action of the trial court was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 25} "[A] supplemental pleading [pursuant to Civ.R. 15(E)] * * * is designed to cover matters subsequently occurring but pertaining to the original cause." Mork, supra, at 461, citingUnited States v. Vorachek (C.A. 8, 1977), 563 F.2d 884. A supplemental pleading merely adds to or continues the original complaint. It enables the plaintiff to allege incidents that took place since the commencement of the lawsuit which will modify the amount or nature of relief sought. Staff Note to Civ.R. 15(E). Therefore, "under Civ.R. 15, a supplemental pleading must contain only matters in common with the original complaint" and may not raise "[a] new and different cause of action[.]" Mork,
citations omitted.
 {¶ 26} In this case, appellees stated in their motion to file a supplemental complaint that "facts and circumstances" had changed since the original complaint was filed. The motion stated that as a result of being "forced" to tender the monies to pay the lien, they suffered "numerous additional damages." When the motion was granted, appellees filed the supplemental complaint. However, it contained two new causes of action — one for fraud and one for negligence — in addition to the original requests for release of the lien and relief from slander of title. Appellees' supplemental pleading was more than a mere addition to, or continuation of, the original complaint and sets forth two new and different causes of action. See Mork,70 Ohio App. 3d at 461. The supplemental complaint therefore did not comply with Civ.R. 15(E) and the trial court abused its discretion by granting appellees' motion and allowing the case to proceed to trial on the issues of fraud and negligence. Accordingly, appellant's fifth assignment of error is well-taken.
 {¶ 27} In its fourth assignment of error, appellant asserts the verdict was not supported by the manifest weight of the evidence. It is axiomatic that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St. 2d 279, at the syllabus.
 {¶ 28} In light of our determination that the trial court erred by granting appellees' motion to file a supplemental complaint and thereby allowing the case to proceed to trial on the additional claims of fraud and negligence, we will consider this assignment of error only as to the slander of title claim.
 {¶ 29} Slander of title is a tort action which may be "`brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss.'" Green v. Lemarr
(2000), 139 Ohio App.3d 414, 430, citing Buehrer v. ProvidentMut. Life Ins. Co. of Philadelphia (1930), 37 Ohio App. 250,257. To prevail, a claimant must prove: (1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages. Id.
 {¶ 30} Generally, slander of title cases involve documents filed against a particular piece of property by parties who claim an interest in the property. In this case, appellant filed an affidavit for a mechanic's lien stating Madden Sons, LLC owed it $10,625.58 for materials furnished and delivered to property owned by appellees between June 2003 and February 2004.
 {¶ 31} Appellees argued at trial that appellant deliberately delivered the screens after Kay Gilson called in February 2004 in order to gain an extra 60 days in which to file a lien for payment of the windows and doors. They argued that the order was filled in the summer of 2004 when the windows and doors were delivered and that the 60-day time limit for filing the lien began to run immediately after the final delivery. Appellees asserted that as a result of the lien on their property they were unable to convert their construction loan to a permanent mortgage as required by their lender and had to pay higher closing costs and a higher interest rate when they finally obtained financing.
 {¶ 32} The "Affidavit For Lien" was filed by appellant in accordance with R.C. 1311.02, 1311.06 and 1311.07. Pursuant to R.C. 1311.02, a materialman who furnishes any material to an original contractor "* * * has a lien to secure the payment therefore upon the improvement and all interests that the owner * * * may have or subsequently acquire in the land or leasehold to which the improvement was made or removed."
 {¶ 33} R.C. 1311.06 sets forth the information that must be included in the affidavit and the time period for filing. Subsection (B)(1) states that if the lien arises in connection with a one- or two-family dwelling, as is the case herein, the affidavit shall be filed "within sixty days from the date on which the last labor or work was performed or material wasfurnished by the person claiming the lien." (Emphasis added.)
 {¶ 34} At trial, Michael Madden testified that when the windows and doors were delivered to the job site he knew the screens were not included. He stated it was standard procedure for the dealer to deliver the screens and hardware after the house and yard were finished so that they would not be damaged. He testified he never asked for the screens to be delivered to the property because he owed appellant money. Madden also stated he had been told by appellant's salesman that the company would not deliver the screens until it was paid.
 {¶ 35} Kay Gilson testified as to her conversation with appellant when she was attempting to locate screens for her windows. She stated that when she called appellant and asked a representative whether she could purchase screens she was told they might have her screens in storage. Gilson testified that when she asked how she could get the screens she needed, the representative told her she had to check with the legal department because the contractor had not paid for them. Shortly thereafter, the screens were delivered to appellees' house.
 {¶ 36} At trial, Alan Mikesell, president of Windows and Doors Showcase, testified that his bookkeeper approached him after Gilson's call and asked if they could ship the screens. Mikesell told her they could. Mikesell testified he knew at the time that the account had not been paid. He also testified that on its invoices, appellant normally does not break out separate costs for screens. Mikesell confirmed Madden's testimony that screens often are not delivered until the end of the job so that they will not be damaged on the construction site. He stated that in this case, a $20.00 charge was added for appellant to hold the screens until a later date. Mikesell further testified that when he authorized delivery of the screens he was aware it would create a new 60-day period in which his company could file a lien.
 {¶ 37} Mikesell admitted his decision to authorize delivery of the screens was partially based on gaining an additional 60 days in which to file a lien. This testimony, however, does not constitute evidence that the lien was published with malice, which is one of the requirements for slander of title as set forth in Green, supra. Appellant was entirely within its rights to first, deliver the screens, and second, file the lien pursuant to R.C. 1311.01, et seq., since by February 2004 it still had not been paid. The law provides for a lien to be filed "within 60 days from the date on which the last labor or work was performedor material was furnished by the person claiming the lien." (Emphasis added.) R.C. 1311.06(B)(1). In this case, the date the last material was furnished was February 18, 2004. The original order placed by Madden was not complete until the screens and muntins were delivered. There is no evidence appellant intentionally held onto the screens beyond the normal time for delivering them so as to extend the period for filing a lien.
 {¶ 38} Pursuant to Green, for a slander of title action to succeed, the "statement" published — in this case the lien — must have been false. There was no evidence presented that the lien was "false." Appellant was owed a sum of money for the windows and doors and, as of the date the lien was filed, had not been paid. The affidavit for lien contained no false statements. Based on the foregoing, we find appellees failed to prove the elements of slander of title and the verdict was against the weight of the evidence. Accordingly, appellant's fourth assignment of error is well-taken.
 {¶ 39} Having made the foregoing determinations as to summary judgment, appellees' supplemental complaint and the jury's verdict, we now turn to appellant's assignments of error concerning its motions for directed verdict and judgment notwithstanding the verdict, and its request for remittitur. As part of its second assignment of error, appellant asserts the trial court erred by denying its motion for a directed verdict at the close of appellees' case. However, it appears from the record that appellant did not actually request a directed verdict. Counsel asked for a dismissal as to each of the three causes of action. Further, the trial court did not state it was denying a request for a directed verdict; in fact, the trial court did not issue any decision and at one point stated it was going to withhold a ruling. No decision was made thereafter. On appeal, appellant did not specifically address the requirements of Civ.R. 50(A) and this portion of the second assignment of error is without merit. Also as part of the second assignment of error, appellant asserts the trial court erred by denying its motion for judgment notwithstanding the verdict. Based on our finding that the jury's verdict was against the weight of the evidence, this argument is moot. Appellant's second assignment of error is not well-taken. Appellant's third assignment of error asserting that the trial court erred in refusing to order remittitur also is moot.
 {¶ 40} On consideration whereof, this court affirms the trial court's denial of appellant's motion for summary judgment. The verdict of the jury awarding compensatory and punitive damages and determining that appellees are entitled to attorney fees is reversed. The order of the trial court as to the amount of attorney fees, pre-judgment interest, and post-judgment interest is reversed. This matter is remanded to the trial court for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Parish, J., concur.