McCLURE et al.

v.

FISCHER ATTACHED HOMES et al.

2007-Ohio-7259.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2006 CVH 1807.

Decided Oct. 29, 2007.

40

Charles and Shirley McClure, pro se.

Frost, Brown & Todd, L.L.C., Stephen M. Gracey, and Ali Razzaghi, for defendants Villas in the Parke Homeowners Association, Resource Property Management Co., Mort Simpson and other association board members, and Eric Regula.

Keating, Muething & Klekamp, P.L.L., and Christy M. Nageleisen, for defendants E. Todd Wilkowski and Fischer Attached Homes.

Cuni, Ferguson & LeVay and Mark Wilder, pro se.

Lerner, Sampson & Rothfuss, L.P.A., and Rick DeBlasis, for defendant Melissa Whalen.

Bricker & Eckler, L.L.P., Nelson Reid, Justin Ristau, and Daniel Gibson, for defendant Marjorie Lane.

James Nichols, for Clermont County Treasurer.

---

HADDAD, Judge.

{¶ 1} This cause is before the court on a motion for summary judgment brought by the defendants Mort Simpson, Villas in the Parke Homeowners Association ("VPHOA"), and Resource Property Management Company ("RPM") (collectively, "the defendants").[1] The plaintiffs in this action have chosen to appear pro se. The defendants were represented by attorneys Stephen M. Gracey and Ali Razzaghi.

{¶ 2} The plaintiffs filed a complaint against the defendants for malicious prosecution. The defendants in this matter filed a motion to dismiss, which included four counterclaims against the plaintiffs. The defendants seek summary judgment on all counterclaims against Charles and Shirley McClure ("the plaintiffs"). Those counterclaims consist of the following: (1) a claim to quiet title, (2) a claim for slander of title, (3) a claim for fraudulent filing of a mechanic's lien, and (4) an action requesting that this court declare the plaintiffs vexatious litigators. The plaintiffs were required to submit their response to the motion for summary judgment by May 7, 2007, but have failed to do so.

{¶ 3} The court notes that while these claims were pending, the plaintiffs filed for bankruptcy in the United States Bankruptcy Court, Southern District of Ohio, Cincinnati Division, case No. 1:07–bk–12680. All proceedings in Clermont County ceased at that point due to a suggestion of stay under the Bankruptcy Code, filed by the defendants on June 26, 2007. The court was then notified on October 9, 2007, that the defendants obtained a relief from stay of bankruptcy, as evidenced by the October 2, 2007 order granting amended motion for relief from the automatic stay issued by the Bankruptcy Court.

{¶ 4} Upon consideration of the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, written stipulations of fact, and the applicable law, and pursuant to the relief from stay issued by the Bankruptcy Court, the court now renders the following decision.

---

1. The court will refer to the defendants collectively throughout this decision despite the fact that some of the causes of action relate solely to Simpson.

## FINDINGS OF FACT

{¶ 5} The plaintiffs bought a condominium located at 1290 Villa Parke, Amelia, Ohio. This condominium was located within a condominium complex managed by RPM. The plaintiffs became members of VPHOA as a result of their purchase within the Villa Parke community. The defendant, Mort Simpson, was president of the VPHOA at the time. Simpson also owns a condominium located in the same complex. Sometime after the plaintiffs purchased the condominium and moved in, the VPHOA raised its monthly dues. The plaintiffs did not pay the increased dues and incurred late fees as a result. The VPHOA was also responsible for having trees cut on some property behind the plaintiffs' condominium. The plaintiffs took issue with the VPHOA increasing monthly dues before the one-year anniversary of their purchase and filed suit when the VPHOA attempted to collect the amounts past due and the late fees. The plaintiffs further alleged that VPHOA wrongfully cut the trees from behind the plaintiffs' home, causing the plaintiffs to suffer damage in the form of decreased property value and loss of enjoyment. Plaintiffs sought damages for the replacement value of the trees. The plaintiffs also argued that the defendants failed to make necessary repairs to their home.

{¶ 6} The plaintiffs filed their first complaint in the United States District Court for the Southern District of Ohio, case No. 1:04CV433, on June 28, 2004. The district court dismissed the case for lack of subject-matter jurisdiction, and the plaintiffs appealed. The United States Court of Appeals for the Sixth Circuit affirmed.

{¶ 7} The plaintiffs filed an action on January 6, 2006, in the Clermont County Court of Common Pleas, case No. 2006 CVH 0027, while the federal case was still pending. The defendant, VPHOA, filed a counterclaim/third-party complaint against the plaintiffs for past-due VPHOA fees and moved to foreclose on the plaintiffs' home. The defendants filed a motion for summary judgment on the plaintiffs' claims, as well as on their counterclaim/third-party complaint against the plaintiffs. The court granted the motions for summary judgment on December 22, 2006.

{¶ 8} On January 12, 2006, while case No. 2006 CVH 0027 was pending, the plaintiffs filed a mechanic's lien in the Clermont County Recorder's Office on Mort Simpson's personal residence, located at 1238 Villa Parke, Amelia, Ohio, allegedly as a result of both Simpson cutting down and removing the trees from behind the plaintiffs' residence and the defendants' failure to render services. The plaintiffs allege that Simpson owes an estimated $20,000 for services not rendered and for damages.

{¶ 9} While the motion for summary judgment was pending in case No. 2006 CVH 0027, the plaintiffs brought the present action, case No. 2006 CVH 1807, against the defendants, alleging malicious prosecution. The court rendered a decision on the record on April 6, 2007, granting the following: Fischer Attached Homes' motion to dismiss; Mark Wilder's motion for summary judgment; VPHOA, RPM, Mort Simpson, and Eric Regula's motion to dismiss; E. Todd Wilkowski's motion to dismiss; Melissa Whalen's motion to dismiss; and Marjorie Lane's motion to dismiss. On that same date, the court denied the following: plaintiffs' motion for default judgment; plaintiffs' motions for sanctions against Mort Simpson and Mark Wilder; plaintiffs' motion to dismiss Judge McBride's decisions; and plaintiffs' motion for an injunction against Judge McBride's entry of judgment. The defendants filed their counterclaims against the plaintiffs on January 18, 2007. The defendants filed a motion for default judgment on February 22, 2007, but the court found that the plaintiffs had answered the counterclaims. Thus, the motion for default judgment was denied at the hearing held on April 6, 2007, with the judgment entry being submitted on April 17, 2007. As a result, the defendants have filed this motion for summary judgment on the counterclaims, and the plaintiffs have failed to respond.

## THE LEGAL STANDARD

{¶ 10} In considering a motion for summary judgment, the court will look at the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C). According to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Id. at 66, 8 O.O.3d 73, 375 N.E.2d 46; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, at ¶ 18, citing *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. The moving party cannot discharge its initial burden by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher* at 293, 662 N.E.2d 264. The moving party must specifically point to evidence

that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. Id.

{¶ 11} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Civ.R. 56(E). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

## LEGAL ANALYSIS

### (1) Quiet Title

{¶ 12} The plaintiffs placed a mechanic's lien on the residence of defendant, Simpson, on January 12, 2006 at 11:37 a.m.[2] The defendants allege that the plaintiffs were deceptive in obtaining this mechanic's lien, and the mechanic's lien should thus be declared invalid and the title to Simpson's residence quieted.[3]

{¶ 13} The defendants have argued that the mechanic's lien placed on Simpson's property constitutes a cloud on title, and equity requires that it be removed. A cloud on title "is but an apparent defect * * *; the density of the cloud can make no difference in the right to have it removed. Anything of this kind that has a tendency, even in a slight degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership, is * * * a cloud upon his title." *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 168, 658 N.E.2d 1109. An invalid lien recorded against one's title creates the appearance that there is an encumbrance on title when in fact there is not. Clearly the appearance of such a lien casts doubt on Simpson's title to the property in question; therefore, the court finds that the lien, if found to be invalid, would constitute a cloud on Simpson's title. If, however, the lien is determined by the court to be valid, it becomes an encumbrance on title rather than a cloud on title, and the court cannot remove it.

{¶ 14} The defendants have sought to have the alleged cloud removed and title to the property quieted. An action to quiet title is governed by R.C. 5303.01. The Ohio Revised Code provides that "[a]n action may be brought by a person in possession of real property, by himself or tenant, against any person

---

2. The plaintiffs allege in the mechanic's lien that the defendants owe an estimated $20,000 for services not rendered and for damages.

3. The court notes that a mechanic's lien on a private improvement is governed by R.C. 1311.01 through 1311.22.

who claims an interest therein adverse to him, for the purpose of determining such adverse interest." R.C. 5303.01. An action to quiet title is equitable in nature. *W.C. McBride, Inc. v. Murphy* (1924), 111 Ohio St. 443, 447, 145 N.E. 855. See also *Aveyard v. Shelron Ents., Inc.* (Jan. 11, 1985), Montgomery App. No. 8855, 1985 WL 6675, at *3. Therefore, the court may quiet title only when there is no adequate remedy at law. The defendants have argued that Simpson has no adequate remedy at law because no monetary award can give him clear title to his property. The court is inclined to agree with the defendants and finds that there can be no adequate remedy at law if the lien is in fact invalid. The only way to repair the title to Simpson's property would be to remove the cloud.

{¶ 15} The court must determine whether the lien is invalid such that it may be removed and title may be quieted. R.C. 1311.02 provides that "[e]very person who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate, or the owner's, part owner's, or lessee's authorized agent, and every person who as a subcontractor, laborer, or material supplier, performs any labor or work or furnishes any material to an original contractor or any subcontractor, in carrying forward, performing, or completing any improvement, has a lien to secure the payment therefore upon the improvement and all interests that the owner, part owner, or lessee may have or subsequently acquire in the land or leasehold to which the improvement was made or removed." R.C. 1311.02. Therefore, in order to support the validity of the mechanic's lien, the court must find that (1) a contract existed between the plaintiff and the defendant, (2) the contract provided for labor or supplies to be delivered, (3) the labor or supplies were in furtherance of improvements to the property, and (4) the parties contracted for payment to be made upon the improvements.

{¶ 16} For the defendants to succeed on their motion for summary judgment, the court must find that no express or implied contract existed requiring that the defendants provide labor or supplies to the plaintiffs. The plaintiffs in this case have not asserted that such a contract existed between them and the defendants. To the contrary, the plaintiffs have asserted that Simpson and the VPHOA performed this work without their knowledge and consent. Likewise, the defendants do not allege that such a contract existed. The undisputed facts reveal that Simpson, on behalf of the VPHOA, removed trees from some property that was within the view of the plaintiffs' home. The plaintiffs placed a lien on Simpson's home as a result of his actions. Because no contract was alleged and there was no meeting of the minds, the court finds that the first element required for a mechanic's lien has not been satisfied. Since the first element has not been satisfied, it is unnecessary to discuss the remaining elements.

■ {¶ 17} The court further finds that the plaintiffs are not the proper parties to file the mechanic's lien. It was Simpson and the VPHOA who performed the services. For this reason, it would have been Simpson and the VPHOA who could have placed a mechanic's lien as security for the work they performed. In order for the plaintiffs to claim a lien on Simpson's residence, the plaintiffs would have had to provide labor or supplies to Simpson. This did not occur in this case. Simpson provided services, but not pursuant to a contract; thus, neither party owed a debt to the other.

■ {¶ 18} The court also finds that the lien was not filed within the requisite time period. R.C. 1311.06(B)(1) requires that a lien arising in connection with a residential unit be filed "within sixty days from the date on which the last labor or work was performed or material was furnished by the person claiming the lien." R.C. 1311.06(B)(1). Liens filed more than 60 days after the work has been completed will be deemed invalid. *Gilson v. Windows & Doors Showcase, L.L.C.*, Fulton App. Nos. F–05–017 and F–05–024, 2006-Ohio-2921, 2006 WL 1580040, at ¶ 18. The trees were cut on or about January 18, 2005. The mechanic's lien was filed January 12, 2006. Because the mechanic's lien was filed nearly one year after the trees were cut, it was not filed within 60 days of the completion of the work. Thus, the mechanic's lien is deemed invalid.

■ {¶ 19} The court also notes that the plaintiffs argued that the lien was to secure payment for services not rendered. The court finds that this is not an appropriate reason for obtaining a mechanic's lien. The mechanic's lien statute is designed so that a provider of services or supplies can secure payment for those services or supplies. Damages for services not rendered are best addressed by filing a civil action and not a mechanic's lien.

{¶ 20} Even when the court reads the evidence presented in a light most favorable to the plaintiffs, the court finds that there is no genuine issue of material fact, that reasonable minds can come to but one conclusion as to the invalidity of the mechanic's lien, and that the defendants are entitled to judgment as a matter of law. For the foregoing reasons, the court declares that the mechanic's lien filed against Simpson's personal residence is invalid and must be removed as a cloud on Simpson's title. The court hereby grants defendants' motion for summary judgment on the issue of the validity of the mechanic's lien, thus quieting the title to Simpson's personal residence.

### (2) Slander of Title

■ {¶ 21} "Slander of title is a tort action which may be brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Green v. Lemarr* (2000), 139 Ohio App.3d 414, 430, 744 N.E.2d 212. The claimant must prove that "(1) there was a publication of a slanderous statement disparag-

ing claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard for its falsity; and (4) the statement caused actual or special damages." Id. Slander-of-title cases usually involve documents being filed against a piece of property by parties claiming an interest in the property. *Gilson* at ¶ 30. As a general rule, wrongfully recording an unfounded claim to the property of another constitutes slander of title. *Green* at 433, 744 N.E.2d 212. This is true so long as the other elements are satisfied, namely malice and special damages. Id. at 434, 744 N.E.2d 212. In the context of slander of title, malice exists when one acts in reckless or wanton disregard of the rights of others. *Consun Food Industries, Inc. v. Fowkes* (1991), 81 Ohio App.3d 63, 72, 610 N.E.2d 463. One need not act with personal hatred or ill will for the action to amount to malice. Id.; *Weiner v. Kopp* (June 25, 1997), Hamilton App. Nos. C–960611 and C–960631, 1997 WL 346095, at 5.

{¶ 22} The court finds that a slanderous statement disparaging Simpson's title was published when the mechanic's lien was recorded in the Clermont County Recorder's Office. The court further finds that the statement was false because no valid mechanic's lien was in existence. However, despite the fact that the plaintiffs filed an unfounded lien against the defendant's property, the court finds from the evidence before it that a legitimate question of fact exists as to whether the plaintiffs acted with malice or reckless disregard when they recorded the mechanic's lien. Although the standard does not require that the plaintiffs act with hatred or ill will, a question of fact exists as to whether the plaintiffs acted with the requisite degree of recklessness when they recorded the lien. For this reason, the court finds that whether the plaintiffs acted with malice or reckless disregard is an issue for the trier of fact. Likewise, there is a legitimate issue of fact as to the defendants' damages. The defendants allege that Simpson's property has been impaired, that the fair market value has been diminished, and that he has been greatly hindered in the free enjoyment, use, and disposition of his property. However, the court finds no evidence to support these allegations. While it may be true that the mechanic's lien could hinder his ability to dispose of his property, there is no evidence that it has done so. The court simply cannot determine from the facts before it exactly what actual or special damages Simpson has suffered as a result of the mechanic's lien on his property. While the court does not agree with the actions of the plaintiffs in this matter, it cannot grant summary judgment on conclusory allegations alone. For the foregoing reasons, the court denies the defendants' motion for summary judgment on the defendants' claim for slander of title.

### (3) Fraudulent Filing of a Mechanic's Lien

{¶ 23} Fraud is a false representation of fact that misleads and is intended to mislead another. *Secrest v. Gibbs,* Lake App. No. 2003–L–083, 2005-

Ohio-2074, 2005 WL 1007229, at ¶ 19. The defendants must prove, by a greater weight of the evidence, the following elements: (a) a false representation of fact was made with knowledge of its falsity or with utter disregard and recklessness about its falsity that knowledge may be found, (b) the representation and/or concealment was material, (c) the representation or concealment was made with the intent of misleading someone, and (d) the defendants were injured and the injury was directly caused by the plaintiffs' deception or false representation. Id. at ¶ 20–24.

{¶ 24} The defendants allege that the plaintiffs falsely represented that they had a debt and/or judgment against Simpson and that they made these representations with knowledge of their falsity or with utter disregard and recklessness about their falsity. The defendants argue that these representations were material in that it affected Simpson's right to enjoy his personal residence. The defendants further argue that these representations were made with the intent of misleading the Clermont County Recorder's Office and the general public. The defendants allege that as a proximate result of this fraudulent conduct, the defendants have incurred expenses, including attorney fees, in clearing title to Simpson's property. The defendants also allege that Simpson has suffered emotional distress as a result of the plaintiffs' alleged fraudulent activity.

{¶ 25} The defendants must first prove that a false representation of fact was made with knowledge of its falsity. Despite the fact that the plaintiffs filed an invalid lien against the defendant's property, the court finds from the evidence before it that a legitimate question of fact exists as to whether the plaintiffs acted with actual knowledge of the falsity of the statement, or with recklessness about its falsity such that knowledge could be inferred, when they obtained the mechanic's lien. The court finds that a question of fact exists as to whether the plaintiffs acted with knowledge or the requisite degree of recklessness when they recorded the lien. For this reason, the court finds that whether the plaintiffs acted with knowledge of the falsity of the information is an issue for the trier of fact.

{¶ 26} The court recognizes that the plaintiffs made false representations when they obtained the mechanic's lien, but the defendants were unable to prove knowledge. If the court had found that the plaintiffs had knowledge that their representations were false, the defendants would have to prove that the representation was material. The court finds that the defendants have clearly established this element. For one to obtain a mechanic's lien against the property of another, there must be a current sum of money owed to that party. The purpose of the mechanic's lien is to secure payment of the amount owed. If no amount is owed, then no mechanic's lien can be issued. The plaintiffs may have felt that they should receive compensation for Simpson's actions and inactions, but the

facts are that they did not contract for the services. The plaintiffs' recourse in this matter was to file a civil lawsuit for damages and not a mechanic's lien. Therefore, because the purpose of the mechanic's lien is to secure payment of the amount owed, the court must determine that the statement that Simpson owed them $20,000 was material to their obtaining the mechanic's lien. If such a statement had not been made, then the mechanic's lien would not have been issued.

{¶ 27} The third element the defendants must prove is that the statement was made with the intent of misleading someone. Again, there is no question that this element is satisfied. The statement that the defendants owed them $20,000 was made for the sole purpose of obtaining the mechanic's lien. They made this misleading statement to the Recorder's Office so that it would appear that they were entitled to a mechanic's lien. The mechanic's lien itself was recorded on Simpson's title, thus anyone examining his title would be misled into believing that there was a lien against his property. The court finds that the plaintiffs stated that a debt was owed solely to mislead the Recorder's Office and the mechanic's lien was obtained to mislead those viewing Simpson's title.

{¶ 28} Finally, the court must find that Simpson was injured as a direct result of this misrepresentation. While it may be true that the mechanic's lien was acquired solely because of the misrepresentations by the plaintiffs, the defendants have presented no evidence of injury. Simpson is seeking punitive damages, attorney fees, and costs in having to remove the lien from his property. While the court recognizes that the defendants have incurred attorney fees and costs as a result of this invalid lien, the defendants have presented no pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, or written stipulations of fact to support these allegations. The court cannot grant summary judgment based on conclusory allegations alone. Because the court finds that there is a legitimate issue of fact as to the knowledge requirement and the damage suffered as a result of the mechanic's lien, the court must deny the defendants' motion for summary judgment on their claim that the plaintiffs fraudulently filed this mechanic's lien.

(4) Vexatious Litigation

{¶ 29} The Ohio Revised Code provides that anyone "who has defended against habitual and persistent vexatious conduct in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court may commence a civil action in a court of common pleas with jurisdiction over the person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator." R.C. 2323.52(B). A vexatious litigator is defined as "any person who has habitually, persistently, and without reasonable

grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions." R.C. 2323.52(A)(3). Vexatious conduct is conduct of a party in a civil action that satisfies any of the following criteria: (a) the conduct serves merely to harass or maliciously injure another party to the civil action, (b) the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or (c) the conduct is imposed solely for delay. R.C. 2323.52(A)(2). Conduct means "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1)(a). The person may commence this action while the civil action or actions in which the vexatious conduct occurred are still pending or may commence the action within one year after the termination of the civil action in which the conduct occurred. R.C. 2323.52(B).

{¶ 30} "[S]eparate, repetitive actions are not necessary for a vexatious litigator finding, and such finding can be based upon actions in a single case." *Roo v. Sain*, Franklin App. No. 04AP–881, 2005-Ohio-2436, 2005 WL 1177940, at ¶ 18, citing *Farley v. Farley*, Franklin App. No. 02AP–1046, 2003-Ohio-3185, at ¶ 48. A person may be declared a vexatious litigator as long as the person uses the courts to engage in vexatious conduct. *Borger v. McErlane* (Dec. 14, 2001), Hamilton App. No. C–010262, 2001 WL 1591338, at 3. "It is the nature of the conduct, not the number of actions, that determines whether a person is a vexatious litigator." Id. The purpose of the vexatious litigator statute is to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds for doing so. *Mayer v. Bristow* (2000), 91 Ohio St.3d 3, 13, 740 N.E.2d 656. The statute is not designed to prevent vexatious litigators from proceedings on legitimate claims, but instead establishes a screening mechanism under which the vexatious litigator can petition the court for a determination of whether the proposed claim is legitimate. Id. at 14, 740 N.E.2d 656.

{¶ 31} In support of their argument that the plaintiffs are vexatious litigants, the defendants argue that the allegations in this case are similar to the allegations made in two previously filed actions. The defendants contend that these lawsuits are baseless and serve merely to harass and burden the defendants. The first lawsuit to which the defendants refer was filed in the United States

District Court for the Southern District of Ohio, which the plaintiffs appealed. The court of appeals affirmed. The second lawsuit was filed in the Clermont County Court of Common Pleas, case No. 2006 CVH 0027. The cause of action before the court today is the third lawsuit that the plaintiffs have filed against the defendants. While this case was pending, the plaintiffs filed another lawsuit against the same defendants in the Clermont County Court of Common Pleas, case No. 2007 CVH 0195.

{¶ 32} The court finds that the lawsuit filed in the federal court system cannot and will not be used in determining whether the plaintiffs are vexatious litigants. "[T]he vexatious litigation to which the statute has reference is aimed at proceedings 'in the court of claims, or in a court of common pleas, municipal court or county court' and does not apply to federal cases, cases between other parties or legislative and administrative proceedings." *Carr v. Riddle* (2000), 136 Ohio App.3d 700, 704, 737 N.E.2d 976, citing *Cent. Ohio Transit Auth. v. Timson* (1998), 132 Ohio App.3d 41, 724 N.E.2d 458 (federal cases cannot be used as evidence to support a finding that a person is a vexatious litigator). However, at least one case has held that evidence of federal cases is admissible under Evid.R. 406, which provides that evidence of a habit is relevant to prove that the conduct of the person on a particular occasion was in conformity with the habit. *Borger* at 4. Therefore, while the plaintiffs' conduct in federal court may not be used as evidence that they are vexatious litigants, it may be used to establish that the plaintiffs were acting in conformity with a habit.

{¶ 33} The plaintiffs have filed three lawsuits in Clermont County, two of which were pending at the time the defendants filed their motion for summary judgment. The court has reviewed this case and has determined that the plaintiffs filed 13 motions that were not in response to motions made by the defendants. One additional motion filed by the plaintiffs was only partially in response to a motion filed by the defendants. With that being said, however, the court finds that declaring the plaintiffs vexatious litigants is an extreme measure which should only be granted when there is no nexus between the filings made by the plaintiffs and their intended claims. While the motions filed by the plaintiffs may have contained information that the defendants and the court believe was irrelevant, many of the motions were not completely baseless. The court is mindful of Simpson's frustration, but it cannot declare the plaintiffs vexatious litigants on a motion for summary judgment simply because they filed numerous motions. Likewise, the court cannot declare the plaintiffs vexatious litigants solely because they filed lawsuits that the defendants might consider frivolous. The defendants must prove that there is no genuine issue of material fact as to whether the requirements in R.C. 2323.51(A)(2) have been met, and the court simply cannot determine from the evidence before it that the criteria for

declaring plaintiffs vexatious litigators has been satisfied. For the foregoing reasons, the court hereby finds that there is a genuine issue of material fact as to whether the criteria in R.C. 2323.51(A)(2) have been satisfied and that reasonable minds can come to different conclusions; therefore, the defendants' motion for summary judgment on the issue of vexatious litigation is denied.

## CONCLUSION

{¶ 34} In light of the foregoing analysis, the court finds that the defendants are entitled to judgment as a matter of law on their action to quiet title and grants their motion for summary judgment with respect to that counterclaim only. The mechanic's lien filed against Simpson's property is declared invalid and title to his property is quieted. Because genuine issues of material fact exist with regard to the remainder of the defendants' counterclaims, the remainder of their motion for summary judgment is denied.

Judgment accordingly.