JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Roger Temethy, appeals the decision of the Cuyahoga County Court of Common Pleas, General Division, granting the motion for summary judgment filed by appellees Debra Tanner and Huntington Bank.[1] Upon our review of the record presented and the arguments of the parties, we affirm the decision of the trial court for the reasons set forth below.
 {¶ 2} Appellant was employed by Huntington Bank from May 2000 through November 2001 in the auto loan collections department. In April 2001, one of Temethy's coworkers, Tael Flor, reported to her supervisor, Debra Tanner, that Temethy had made a comment about bringing a gun to work. Specifically, Temethy allegedly referenced an incident in Texas where an employee at a "federal building * * * brought a gun to work and blew the place apart" and stated that "it could happen here." Flor told the supervisor that the comment alarmed her and that she perceived it as a threat from Temethy.
 {¶ 3} Tanner informed her manager, Mike Conrad, of the comments that same afternoon and prepared a memo summarizing what Flor had told her occurred. Conrad determined that Temethy was not an actual threat to the department, and simply addressed the incident with Temethy and asked him to refrain from making such comments in the future.
 {¶ 4} A few weeks later, Tanner recounted the incident during a "management team" meeting of supervisory and non-supervisory personnel without mentioning appellant or his co-worker, Flor, by name. At that meeting, the site supervisor, Nancy Gill, requested that Tanner reveal the names of the parties to the original conversation. Tanner did so, in the presence of all the meeting participants. Gill was unsatisfied with the handling of the situation by Tanner and Conrad and felt that the comment should have been reported to Security and/or Human Resources immediately. The proper handling of future similar incidents was discussed. As a result of this meeting, Huntington's security team began an investigation of the incident.
 {¶ 5} Security Manager Tony Harris and Security Specialist Nigh Giegerich conducted the investigation for Huntington. Appellant and several other employees were interviewed, and appellant's desk was searched, but no disciplinary action was taken against appellant at any time. Appellant was terminated from Huntington for unrelated reasons later that year.
 {¶ 6} After appellant left the employ of Huntington, he applied for a position at Beneficial Mortgage Corporation in late 2001. Appellant cannot recall the exact date of his application, but stated that it was sometime in October or November 2001. Appellant was interviewed by office manager Allan Davis, but Beneficial did not extend an offer of employment in the Cleveland office. Appellant was offered a position in the Tampa, Florida, office of Beneficial, but he declined that offer.
 {¶ 7} In December 2001, appellant received word that a former Huntington co-worker, Stephanie Mette, was employed in the Cleveland office of Beneficial at the time Temethy interviewed. She was in attendance at the Huntington management meeting where the incident between Temethy and Flor had been discussed, and she related the story to Allan Davis upon discovering that Temethy applied for a position at Beneficial. Appellant contends that the hiring of another applicant at Beneficial's Cleveland office around the same time he had interviewed is proof that the statements that Mette related to Davis were the reason he was not hired by Beneficial's Cleveland office. Davis testified that the information he received from Mette had no effect on the decision not to extend and offer of employment to Temethy in the Cleveland office, and further stated that he regularly interviewed interested applicants whether there were positions available in the Cleveland office or not. Appellant obtained employment with a separate Cleveland based firm on January 1, 2002, for approximately the same rate of compensation he had enjoyed at Huntington.
 {¶ 8} On April 22, 2002, appellant filed a complaint against Huntington, Debra Tanner, and Duwayne Haney.[2] Appellees Huntington and Tanner filed a motion for summary judgment on May 1, 2003, which was granted on July 10, 2003. This timely appeal follows, and appellant presents one assignment of error for our review.
 {¶ 9} "I. The trial court erred when it granted defendants' motion for summary judgment, journal entries of july 10, 2003 Volume 2957, Pages 451, 452."
 {¶ 10} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 12} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
 {¶ 13} Appellant Temethy alleges that the statement made in the supervisor's meeting at Huntington by Debra Tanner regarding the allegations made against him by Yael Flor amounted to defamation and that the republication of such statements by Mette to Davis caused Beneficial to reject his application.
 {¶ 14} Defamation is a false publication causing injury to a person's reputation, or exposing the person to public hatred, contempt, ridicule, shame or disgrace or affecting him adversely in his trade or business. Matalka v. Lagemann (1985),21 Ohio App.3d 134, 136. The entry of summary judgment in a defendant's favor is appropriate in a defamation action if it appears, upon the uncontroverted facts of record, that any one of the following critical elements of a defamation case cannot be established with convincing clarity. Duper v. MansfieldJournal Co. (1980), 64 Ohio St.2d 116. First, there must be the assertion of a false statement of fact; second, that the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault. Id; Celebrezze v. Dayton NewspapersInc. (1988), 41 Ohio App.3d 343, 347.
 {¶ 15} Defamation may be characterized as defamation per se or defamation per quod. The defamatory nature of a statement considered defamation per se is such merely by the meaning of the words spoken. However, a statement with an apparently innocent meaning may become defamatory through interpretation or innuendo in defamation per quod. Kanjuka v. Metrohealth Med. Ctr.,151 Ohio App.3d 183, 2002-Ohio-6803. The determination of whether a statement is slander per se or slander per quod is a question of law for the trial court. McCartney v. Oblates of St. Francis deSales (1992), 80 Ohio App.3d 345, 354. In order for a remark to be considered slander per se, it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation. Id. at 353; See, also, Schoedler v.Motometer Gauge Equip. Co. (1938), 134 Ohio St. 78, 84; See, generally, Restatement of the Law 2d, Torts, supra, Section 570.
 {¶ 16} With defamation per se, damages and actual malice are presumed. The plaintiff must plead and prove special damages resulting from the defamatory statements to establish the basis for relief in defamation per quod. Becker v. Toulmin (1956),165 Ohio St. 549, 556.
 {¶ 17} Even where a plaintiff can establish a prima facie case for defamation, the claim may be defeated where the statement in question was protected by a qualified privilege. "Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and actual malice essential to the right of recovery." Hahn v. Kotten
(1975), 43 Ohio St.2d 237 at 244. A person acts with actual malice where he acts with knowledge that the statements in question are false or with reckless disregard of whether they were false or not. Lyons v. Farmers Ins. Group of Cos., (1990),67 Ohio App.3d 448, 453.
 {¶ 18} A plaintiff must present clear and convincing evidence that a defendant acted with actual malice to overcome a qualified privilege. Jacobs v. Frank (1991), 60 Ohio St.3d 111 at 114. Generally, a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege. Hanly v. Riverside Methodist Hosp. (1991),78 Ohio App.3d 73, 81; Barilla v. Patella (2001),144 Ohio App.3d 524, 533. If a plaintiff can establish a prima facie case of defamation, the defendant may invoke the defense of qualified privilege and avoid liability by demonstrating that: (1) he acted in good faith, (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper, and (5) the publication was made in a proper manner and only to the proper parties. Mosley v. Evans (1993), 90 Ohio App.3d 633, 636, citing Hahn, supra, 43 Ohio St.2d at 246. Where the circumstances of the occasion for the alleged defamatory communication are not in dispute, the determination of whether there is a qualified privilege is a question of law for the trial court. McCartney, supra, at 355; Mauk v. Brundage (1903),68 Ohio St. 89.
 {¶ 19} In the instant case, the facts surrounding the alleged defamatory communication and when it was made are not in dispute. The trial court determined that the statements in question, made by Tanner at the request of her superior, while in a supervisory meeting at Huntington, fit the qualifications for qualified privilege and, because there was no evidence of actual malice, were not defamatory. Moreover, the trial court determined that even if the statements in question were defamatory, they were only actionable as slander per quod, and appellant failed to establish the existence of any damages resulting from the publication.
 {¶ 20} Upon our review of the record presented, and construing the evidence in the light most favorable to the appellant, we agree with the trial court's analysis of qualified privilege. We further find that appellant did not suffer damages as a result of Tanner's disclosure, and he offers no evidence that the statements were the proximate cause of any injury.
 {¶ 21} Assuming arguendo that appellant established a prima facie case for defamation, we turn to the Hahn test for qualified privilege to determine whether appellees may avoid liability. In order to establish a qualified privilege, Huntington must establish that Tanner's disclosure in the supervisor's meeting was, first, made in good faith. The record holds no evidence of ill will or malice toward Temethy on the part of Tanner. Both Tanner and Nancy Gill, the supervisor running the meeting, testified in their depositions that Tanner revealed the names of the parties involved in the incident (i.e., Temethy and Flor) upon the direct request of Gill. Gill asked for the names only upon hearing that the matter was handled internally by the department, and not referred to human resources and security, as it should have been. There seems to be no other motive for revealing Temethy's name in this context other than to report the involved personnel to the proper parties and to illustrate to the supervisory personnel present at the meeting how to effectively handle what Gill perceived as an internal security problem.
 {¶ 22} Internal security and employee relations are valid business interests, and Tanner's statement in the meeting seemed directed only to those interests. Further, Tanner's statement was made to a room of Huntington supervisors, who would have an interest in maintaining the safety of their employees; in fact, Gill indicated that the information shared at these supervisory meetings was designed to be confidential. In addition, Gill stated that Huntington had a "zero tolerance" policy toward workplace violence, and any such statement and/or threat should always be followed up by human resources and security. Therefore, the forum or parties present at that meeting cannot be deemed "improper" for purposes of a qualified privilege analysis.
 {¶ 23} As a result, any statement made by Tanner at this meeting regarding the allegations against Temethy made by Flor would be protected under the qualified privilege doctrine. Temethy has failed to present any evidence that Tanner acted with actual malice when she reported to Gill what Flor had told her. Temethy has also failed to demonstrate any actual malice on the part of Flor in reporting Temethy's alleged statement to Tanner initially. Flor's deposition statement that she disliked the appellant is not enough to meet the standard for clear and convincing evidence of actual malice necessary to defeat the appellee's claim of qualified privilege. Flor testified that she considered the statement a threat, Tanner repeated the statement in a closed-door meeting of supervisors in the interest of employee safety, and there is no evidence that publication or republication of the statement caused Temethy any inability to find employment.
 {¶ 24} Appellant cannot show that the statements made by Tanner, and repeated to Davis at Beneficial by Mette, had any detrimental effect with respect to employment with Beneficial. To the contrary, appellant was offered employment with Beneficial at another location, simply because there were no available positions at the Cleveland office, according to the Beneficial manager with whom appellant interviewed. When appellant chose to remain in Cleveland and turned down the offer from Beneficial, he was able to find similar employment elsewhere at the same rate of pay he had earned at Huntington, thus encountering no impediment to employment. Therefore, appellant's sole assignment of error lacks merit.
 {¶ 25} The judgment is affirmed.
Judgment affirmed.
Sweeney and Mcmonagle, JJ., concur.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Appellant's employer was Huntington Bank, although he names "Huntington Bancshares, Inc." in all pleadings. For clarity, we will refer to this party as "appellee" or "Huntington."
[2] An Amended Complaint was filed on April 17, 2003, which did not list Mr. Haney as a defendant, but which was otherwise identical to the original complaint.