OPINION
{¶ 1} Appellant, Patricia Straus, appeals the judgment of the Lake County Court of Common Pleas awarding appellee, Breckenridge Village, et al., summary judgment on appellant's claim of defamation.
 {¶ 2} Prior to November, 2000, appellant was employed at a nursing home owned and operated by Breckenridge Village. While working at the nursing home, appellant held the position of program coordinator and worked second shift. Cathy Guest, appellant's co-worker, held a similar position but worked third shift. In her deposition, appellant indicated that she would leave work around 11:30 p.m. at which point the third shift employees' duties would commence.
 {¶ 3} During the fall of 2000, Janice Schilt, the daughter of one of the residents, brought a bottle of cough syrup to the home. After administering some medicine to her mother, Schilt placed the cough syrup in the nursing home's kitchen. According to Guest, Schilt put the medicine on the kitchen counter and appellant placed the cough syrup in the refrigerator. Later, Guest alleged, appellant returned to the kitchen, removed the cough syrup, and placed it in her pocket. Appellant consistently denied removing the medicine.
 {¶ 4} On November 1, 2000, Deron Pankake, the nursing home's administrator received a report indicating that Guest observed appellant taking the cough syrup. Pursuant to appellee's policies and procedures, Guest had a duty to report any thefts or suspected thefts of appellee's or its residents' property. Failure to so report could result in immediate termination.[1]
 {¶ 5} After an investigation, appellee obtained a written statement from Guest confirming that she witnessed appellant place a bottle of cough syrup in her blazer pocket. Appellee met with appellant to discuss the alleged theft. Although appellant initially denied any knowledge of the cough syrup, she later recalled Schilt bringing the medicine into the kitchen. After the investigation, appellee determined that the bottle was missing and found no independent evidence contradicting Guest's report. On November 3, 2000, appellant was terminated.
 {¶ 6} Appellant appealed her termination to the nursing home's executive director, Phil Braisted. Braisted conducted his own independent investigation but determined there was insufficient evidence to warrant overturning appellant's termination. Although appellant had another available appeal, she did not pursue this route as she "just didn't want to go through it again, more meetings at that time."
 {¶ 7} Throughout the investigation, however, appellant maintained that she did not steal the cough syrup. To support her position, appellant obtained a statement from a co-worker, Karen Jasco. When questioned by appellee, Jasco claimed that when Schilt placed the medicine on the counter that she, not appellant, picked up the cough syrup and placed it in a nurse's cart. Moreover, Schilt informed appellee that she had visited her mother in the days following the alleged theft and she saw the nurses administer the medicine to her mother. Although this information was available to appellee, appellant was not reinstated.
 {¶ 8} In addition to the Jasco and Schilt statements, appellant indicated that Guest had previously "harassed" her for several months. During her deposition, appellant enumerated several instances wherein Guest "had been harassing" her:
 {¶ 9} "On Friday nights — she [Guest] didn't do this every Friday, but she did it quite often — after everything was explained to her on second shift, she would approach me as I was leaving and start asking me questions about things that she already knew about. Sometimes she wouldn't even show up on the floor until twenty after or twentyfive after."[2]
 {¶ 10} The information that Guest was pursuing involved the status of the residents under appellant's care, e.g. specific conditions or problems exhibited by the residents. Appellant further detailed a similar incident where:
 {¶ 11} "[o]ne night she [Guest] hadn't come on the floor yet, it was 11:30, I was leaving, getting ready to go out the double doors and she opened up the office door and started asking me questions. Actually, I think she asked me one question and I told her, * * * `Any information you need to know about the residents is in the book,'[3] and she wasn't satisfied with that.
 {¶ 12} "* * *
 {¶ 13} "She followed me through the double doors and into the bathroom. * * * And so I took my coat and my backpack and everything and went into the stall and locked it and I [sic] just telling her, `You will have to talk to the office, Kathy.'
 {¶ 14} "* * *
 {¶ 15} "She left the bathroom at that point and waited for me to come out into the lobby. * * * And then she followed me to where we have a time clock and she kept asking me, she kept repeating the same question that she wanted me to tell her about my residents."
 {¶ 16} Appellant further noted another incident where Guest "seemed very annoyed" because appellant could not answer questions regarding a certain resident's blood samples.
 {¶ 17} Notwithstanding this "harassment," appellant confirmed, in her deposition, that Guest never called her any names, did not shout at her, and never threatened her. Appellant, nevertheless, used the above exchanges as a basis for her belief that Guest harbored ill-will toward her and, therefore, made the theft allegations in the absence of good faith.
 {¶ 18} On November 2, 2001, appellant filed a complaint alleging defamation by appellee and an unknown co-worker. Following discovery, the complaint was amended to include Cathy Guest. Appellant premised her theory of recovery on Guest's allegedly false statement implicating appellant in the theft of the cough medicine.
 {¶ 19} Following their answer and discovery, appellee and Guest filed a motion for summary judgment. In their motion, appellee and Guest raised the defense of qualified privilege which, if operative, would require appellant to demonstrate actual malice in order to recover. In her opposition to appellees' motion for summary judgment, appellant argued that Guest's allegations were not grounded in good faith but, rather, motivated by actual malice. On April 30, 2003, the trial court granted appellee's and Guest's motion for summary judgment. Appellant now appeals.
 {¶ 20} Appellant assigns the following error for our review:
 {¶ 21} "The defense of qualified immunity to defamation per se requires the presence of good faith and the absence of actual malice. Where the facts demonstrate an issue of factual dispute to either a jury issue is raised [sic] and a trial court errs in granting summary judgment to the party claiming the defense."
 {¶ 22} In essence, appellant contends that the lower court erred in awarding appellee summary judgment where material issues of fact remain to be litigated with respect to appellee's defense of qualified privilege.
 {¶ 23} We review the trial court's granting of summary judgment de novo. Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, at ¶ 13. Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: (1) there are no genuine issues of material fact remaining; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence in a light most favorable to the non-moving party, that conclusion favors the movant. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
 {¶ 24} A party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial.Celotex Corp. v. Catrett (1986), 477 U.S. 317, 330. During the summary judgment exercise, any doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358. However, summary judgment in a defamation action is proper if it appears, upon the uncontroverted facts of record, that the requisite elements cannot be established. See Dupler v.Mansfield Journal Co. (1980), 64 Ohio St.2d 116, 120; see, also,Sweitzer v. Outlet Communications, Inc., (1999),133 Ohio App.3d 102, 107. The trial court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.Giles v. Norman Noble, Inc. (2004), 88 Fed. Appx. 890, 893.
 {¶ 25} As the current appeal emanates from appellant's claim alleging defamation, it behooves us to set forth the relevant law in this area.
 {¶ 26} Defamation is a false publication causing injury to a person's reputation, or exposing that person to public hatred, contempt, ridicule, or shame, or affecting her adversely in her trade or business. Temethy v. Huntington Bancshares, Inc., 8th Dist. No. 83291, 2004-Ohio-1253, at ¶ 14. Defamation can occur in one of two forms: libel or slander. Generally, slander refers to spoken defamatory words and libel involves written defamatory words. Sweitzer, supra, at 108.
 {¶ 27} A slanderous statement may be defamatory either per se or per quod. Temethy, supra, at ¶ 15. Slander per se occurs where the defamatory statements are injurious by their very meaning. Kanjuka v. Metrohealth Med. Ctr., 151 Ohio App.3d 183,2002-Ohio-6803, at ¶ 16. Slander per quod, alternatively, involves a statement with an apparently innocent meaning which becomes defamatory via interpretation or innuendo. Id. The determination of whether a statement is slander per se or slander per quod is a question of law for the lower court. McCartney v.Oblates of St. Francis de Sales (1992), 80 Ohio App.3d 345, 354.
 {¶ 28} "In order for an oral defamatory remark to be considered slander per se it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation." Hughs, d.b.a., Howland's Music World v.Fordeley, d.b.a. Fordeley Music (June 30, 2000), 11th Dist. No. 99-T-0115, 2000 Ohio App. LEXIS 2990, at 7, citing Schoedler v.Motometer Gauge Equip. Co. (1938), 134 Ohio St. 78, 84. Where facts demonstrate that the slanderous statements meet these criteria, general damages and malice are presumed as a matter of law. See, e.g. Cramton v. Brock (Mar. 23, 1992), 12th Dist. No. CA91-05-011, 1992 Ohio App. LEXIS 1285, at 9.
 {¶ 29} However, a defendant may invoke the defense of qualified privilege in a defamation suit. "A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." Hahn v. Kotten
(1975), 43 Ohio St.2d 237, 244. The defense of qualified privilege is based upon public policy. Id. Although it does not change the actionable quality of the words published, it rebuts the inference of malice that is imputed in the absence of privilege and requires a showing of falsity and actual malice as a condition for recovery. Id. Thus, the presumptions associated with slander per se are lost if the defendant has a qualified privilege. Id. at paragraph one of the syllabus.
 {¶ 30} A statement is qualifiedly privileged when the publisher: (1) acts in good faith; (2) there is an interest to be upheld; (3) the statement is limited in its scope to the purpose of upholding that interest; (4) the occasion was proper, and (5) the publication is made in a proper manner and only to the proper parties. Temethy, supra, at 10. Where the circumstances of the alleged defamatory communication are not in dispute, the determination of whether there is a qualified privilege is a question of law. McCartney, supra, at 355. Where the defendant meets its burden by demonstrating that the publication was protected by qualified privilege, the plaintiff may still recover if she can show that the actionable language was motivated by actual malice, i.e. "with knowledge that the statements were false or with reckless disregard of whether they were false or not." Hahn, supra, at paragraph two of the syllabus.
 {¶ 31} In the current matter, appellant alleges that the statement made by Cathy Guest to appellee's management regarding appellant's alleged theft of the cough syrup was defamatory per se. Although appellant recognizes appellee could raise the defense of qualified privilege, she contends that appellee failed to show all requisite elements of the defense. We agree.[4]
 {¶ 32} The first element of the defense of qualified privilege is good faith. Whether a party acts in good faith is generally a question left to the trier of fact. To wit, where a plaintiff can demonstrate facts establishing a reasonable question regarding a defendant's state of mind at the time in question, a material issue of fact remains on the issue of good faith.
 {¶ 33} Here, appellant presented direct and circumstantial evidence of Guest's "harassing" conduct. The evidence demonstrated that Guest and appellant had past confrontations that were turbulent and, in appellant's view, hostile. When viewed in a light most favorable to appellant, a jury could reasonably find that the parties' inimical past motivated Guest to file her report with appellee. Such a finding would suggest that Guest's actions were motivated by something less than good faith. This being the case, a material issue of fact remains as to whether the report was made in good faith.
 {¶ 34} Appellant has established a material issue of fact as to whether Guest acted in good faith. Therefore, appellee is not entitled to the qualified privilege as a matter of law and the trial court erred in granting appellee summary judgment. For the above reasons, appellant's sole assignment of error has merit. The judgment of the Lake County Court of Common Pleas is reversed, and the case is remanded for further proceedings consistent with this opinion.
O'Neill, J., concurs,
Rice, J., dissents with Dissenting Opinion.
[1] Section D-11 of the OPRS Employee Handbook states that an employee may be immediately terminated for "[t]heft, or removal from the premises without proper authorization, of any property of Ohio Presbyterian Retirement Services, a resident, client or an employee, or knowledge of such theft without properlyreporting it." Emphasis added.
[2] In a record report, Phil Braisted stated, during shift changes, employees have a "half hour overlap" to exchange information regarding residents, inter alia.
[3] The "book" to which appellant refers is a sort of log wherein the coordinators would catalogue relevant details regarding the various residents' care.
[4] It bears noting that appellant has set forth sufficient facts to make out a claim of slander per se as a matter of law: She was able to demonstrate that Guest leveled an oral, defamatory remark involving a criminal offense which was injurious to her trade or occupation.