[Cite as *Johnson v. Mentor Harbor Yachting Club*, 2026-Ohio-601.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| LANCE B. JOHNSON, | CASE NO. 2025-L-023 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| MENTOR HARBOR YACHTING CLUB, et al., | Trial Court No. 2023 CV 001748 |
| Defendant-Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: February 23, 2026
Judgment: Affirmed

*Lance B. Johnson*, pro se, 17325 Euclid Avenue, Suite 2078, Cleveland, OH 44112 (Plaintiff-Appellant).

*Nolan E. Wiley* and *Dale D. Cook*, Isaac Wiles Burkholder & Miller, LLC, Two Miranova Place, Suite 700, Columbus, OH 43215 (For Defendant-Appellee).

JOHN J. EKLUND, J.

{¶1} Appellant, Lance B. Johnson, pro se, appeals the judgment of the Lake County Court of Common Pleas granting the motion for summary judgment filed by Appellee, Mentor Harbor Yachting Club ("Mentor Harbor").

{¶2} Appellant raises ten assignments of error. In his first through fourth assignments of error, Appellant challenges the accuracy of certain statements the trial court made in the "factual overview" portion of its judgment entry. In his fifth through tenth assignments of error, Appellant challenges the trial court's granting of summary judgment

to Mentor Harbor on his claims for, respectively, breach of privacy, libel, slander, vicarious liability, negligence, and intentional infliction of emotional distress.

{¶3}    Having reviewed the record and applicable law, we find that Appellant's assignments of error are without merit.  Appellant's first through fourth assignments of error incorrectly equate the trial court's "factual overview" as "findings of fact."  In addition, only one statement lacks support in the record, and Appellant has not shown resulting prejudice.  In his fifth through tenth assignments of error, Appellant has not established reversible error regarding the trial court's granting of summary judgment.  Therefore, we affirm the judgment of the Lake County Court of Common Pleas.

## Substantive and Procedural History

{¶4}    Mentor Harbor is a private yachting club located in Mentor, Ohio.  Appellant is a Cleveland resident and former member.

{¶5}    This case arises from an incident referred to as the "Drain Plug Incident." In June 2022, Appellant launched his new Regal 26XO boat from a dock at Mentor Harbor.  Shortly thereafter, Appellant realized that he forgot to insert the boat's drain plug. Michael Pettrey, a member and the club commodore at the time, was on his nearby boat. Another member informed Pettrey that a boat was "potentially sinking."  According to Pettrey, he "ran over to see what he could do to assist," and he ultimately helped Appellant get the boat out of the water and load it onto a trailer.  According to Pettrey, "[t]here was quite a bit of water" in the boat.  Appellant concedes "there was water in the boat"; however, he denies that the boat "capsized" or became "swamped."

{¶6}    In August 2022, Appellant and his limited liability company entered into a written agreement with South Shore, a used boat broker, to sell his boat.  According to

South Shore, Appellant represented that the boat had no history of flooding. Purportedly relying on that representation, South Shore sold the boat to a third party. The buyer experienced problems with the boat, and South Shore was tasked with investigating potential water damage.

{¶7} As part of the investigation, Tom Mack from South Shore contacted Pettrey by telephone and asked whether he knew Appellant. Pettrey did not know Appellant by name but recognized Mack's description of his boat. According to Pettrey, he told Mack the following: "I go, 'Yeah. I only met the guy two times. I never saw him again. He had a little mishap where he forgot to put his drain plug in. The boat was sinking, and we – I helped him out, actually.'" Pettrey further stated that at the time of the phone call, he had no knowledge of any dispute between South Shore and Appellant, nor did he have anything negative to say about Appellant.

{¶8} On April 7, 2023, South Shore filed a complaint against Appellant and his limited liability company in the Cuyahoga County Court of Common Pleas, Case No. CV-23-977702, asserting claims for fraud and contractual indemnification. In paragraph 13 of its complaint, South Shore alleged:

> Subsequent investigation disclosed that, in June 2022, at the Mentor Harbor Yachting Club, in the view of several witnesses, [Appellant] had launched the Vessel into the water without a hull drain plug in place. The Vessel began to take on water and was the subject of emergency rescue efforts to stop it from sinking completely. The Vessel was seriously flooded, and indeed, the harbormaster had to lend [Appellant] a plug of his own to stop it from taking on more water, which [Appellant] never returned. Hence, [Appellant] was fully aware that the Vessel had a history of flooding, and indeed, this is apparently what caused him and Knot Partners LLC to try and sell the Vessel.

{¶9} On December 18, 2023, Appellant filed a pro se complaint in the Lake County Court of Common Pleas against Mentor Harbor and John Does 1 through 5.

Case No. 2025-L-023

Appellant alleged that "[t]he detail of the statements of Southshore Marine in the quoted Paragraph 13 above demonstrates that the disclosure of private and embarrassing information about [Appellant] could only have come from the harbormaster or one of the other John Doe defendants."  Appellant asserted the following nine claims for relief: (1) breach of privacy; (2) libel per quod; (3) libel per se; (4) slander pe se; (5) slander; (6) intentional infliction of emotional distress; (7) vicarious liability; (8) negligence; and (9) punitive damages.

{¶10}  On January 17, 2024, Mentor Harbor filed an Answer.

{¶11}  On February 14, 2024, the trial court held a case management conference. On the same date, the court filed an order scheduling deadlines for discovery and dispositive motions and a trial date.

{¶12}  On December 12, 2024, Mentor Harbor filed a motion for summary judgment.

{¶13}  On December 19, 2024, Appellant filed an amended complaint.  On December 26, 2024, Mentor Harbor filed a motion to strike Appellant's amended complaint.  On January 24, 2025, the trial court granted Mentor Harbor's motion and struck Appellant's amended complaint.

{¶14}  On January 8, 2025, following an extension of time, Appellant filed a brief in opposition to Mentor Harbor's motion for summary judgment.  On January 22, 2025, Mentor Harbor filed a reply.  On February 5, 2025, the trial court granted Mentor Harbor's motion for summary judgment.

{¶15} On February 28, 2025, Appellant timely appealed and raises ten assignments of error.

Case No. 2025-L-023

**Standard of Review**

{¶16} Appellant's assignments of error all involve the trial court's granting of summary judgment to Mentor Harbor. We review a trial court's entry of summary judgment de novo, i.e., independently and without deference to the trial court's determination. *DelleCurti v. Fetty*, 2017-Ohio-7965, ¶ 13 (11th Dist.).

{¶17} Summary judgment is proper when (1) "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"; and (2) "it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).

{¶18} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id*. "However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine

issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id*.

{¶19} When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Moore v. Trumbull Mem. Hosp.*, 2016-Ohio-1366, ¶ 16 (11th Dist.). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Id*. In addition, "'the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Factual Overview**

{¶20} Appellant's first through fourth assignments of error involve the "factual overview" portion of the trial court's judgment entry; therefore, we review them in a consolidated fashion.

{¶21} Appellant's first assignment of error states: "The Trial Court erred in finding that: 'Sometime after the Drain Plug Incident, Plaintiff *sold* the boat to South Shore Marine' (Dkt.82, p.1, bottom) when that finding is fundamental to the grant of summary judgment and it did *not* appear from the evidence that Plaintiff 'sold the boat to South Shore Marine'." (Emphasis in original.)

{¶22} Appellant argues that contrary to the trial court's "finding," he did not sell his boat to South Shore.

{¶23} The trial court was incorrect when it stated that Appellant sold his boat to South Shore. Rather, the evidentiary record indicates South Shore was Appellant's sales broker. Despite the statement's inaccuracy, however, we find no reversible error.

{¶24} First, Appellant misapprehends the "factual overview" portion of the trial court's judgment entry. Findings of fact occur "[w]hen questions of fact are tried by the court without a jury." Civ.R. 52. Civ.R. 52 expressly provides that "[f]indings of fact . . . required by this rule . . . are unnecessary upon all other motions including those pursuant to . . . *Rule 56*." (Emphasis added.) This is because "a [trial] court does not make 'findings of fact' when considering a motion for summary judgment." *Rootstown Twp. Bd. of Trustees v. Portage Self Storage*, 2018-Ohio-1674, ¶ 13 (11th Dist.). "Rather, the [trial] court considers evidential materials, pursuant to Civ.R. 56, and determines whether there are genuine issues of material fact for trial or whether the facts are undisputed such that the moving party is entitled to judgment as a matter of law." *Id*. Here, the trial court's "factual overview" did not determine credibility, weigh the evidence, or resolve factual disputes. Instead, the trial court briefly summarized information from the evidence submitted on summary judgment.

{¶25} Second, Appellant has not shown prejudice resulting from the inaccurate statement. Civ.R. 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Case No. 2025-L-023

{¶26} This Court has explained that "[w]hen avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party." *Spellman v. Kirchner*, 2020-Ohio-3240, ¶ 28 (11th Dist.).

{¶27} Appellant contends that the inaccurate statement was a "material factual error" that was "fundamental to the grant of summary judgment." According to Appellant, the statement "circumvents consideration of the South Shore's [sic] duty of inspection and repair of the boat." However, Mentor Harbor was the defendant in the underlying case. South Shore was not a party but was a potential witness. Appellant does not explain how the trial court's analysis of his claims against Mentor Harbor would have been any different without the inaccurate statement. Accordingly, it is harmless error.

{¶28} Appellant's second assignment of error states: "The Trial Court erred in finding that: 'During the sale process, Plaintiff did not disclose the Drain Plug Incident' (Dkt.82,p.1,bottom) when that finding is fundamental to the grant of summary judgment and Appellant presented credible evidence that he fully disclosed the infamous 'Drain Plug Incident' to the used boar [sic] dealer."

{¶29} Appellant's third assignment of error states: "The Trial Court erred in finding that: '[Pettrey] told Mr. Mack he witnessed the boat sinking' (Dkt.82,p.2,top) when that finding is fundamental to the grant of summary judgment and the record contains *no* credible evidence that the boat was ever in danger of *sinking*." (Emphasis in original.)

{¶30} Appellant's fourth assignment of error states: "The Trial Court erred in finding that: '[Pettrey] witnessed the incident and assisted Plaintiff in getting the boat out

Case No. 2025-L-023

of the water' (Dkt.82,p.1,mid-para.) when Commodore Pettrey and Mr. Mack were friends and business associates, and his testimony was disputed by the Appellant."

{¶31} Appellant strongly disagrees with the veracity of the above statements. As explained above, however, the trial court's "factual overview" was not equivalent to "findings of fact."

{¶32} Appellant has also not shown that the above statements lack evidentiary support. Regarding the statement in the second assigned error, Appellant does not point to any evidence that supports his assertion that he "fully disclosed" the Drain Plug Incident to South Shore. In addition, the evidence supports the statements in the third and fourth assigned errors. Specifically, during his deposition, Pettrey testified to telling Mack that "[t]he boat was sinking" and that he helped Appellant get the boat out of the water and load it onto a trailer.

{¶33} Accordingly, Appellant's first through fourth assignments of error are without merit.

**Invasion of Privacy**

{¶34} Appellant's fifth assignment of error states: "The Trial Court erred in dismissing Count One (Privacy) of Plaintiff's Complaint in finding Plaintiff 'fails to set forth facts showing there is a genuine issue of fact that the Drain Plug incident was a private affair' (Dkt.82,p.3,bottom)."

{¶35} In count one, Appellant asserted a claim for breach of privacy, which the trial court characterized as invasion of privacy. The Supreme Court of Ohio has held that "[a]n actionable invasion of the right of privacy" includes "the publicizing of one's private affairs with which the public has no legitimate concern," as well as "the wrongful intrusion

Case No. 2025-L-023

into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth*, 165 Ohio St. 35 (1956), at paragraph two of the syllabus. "'Publicity' for these purposes means 'communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *DelleCurti v. Walgreen Co.*, 2016-Ohio-4741, ¶ 33 (11th Dist.), quoting *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166 (10th Dist. 1985).

{¶36} The trial court found that Appellant's brief in opposition "fails to set forth specific facts showing there is a genuine issue of fact that the Drain Plug Incident was a private affair." According to the trial court, Appellant did not "rebut" Mentor Harbor's argument that multiple people witnessed the incident. Instead, Appellant argued that Mentor Harbor has a common law duty to maintain its members' confidentiality and privacy and pointed to "discovery, affidavit, and sworn depositions."

{¶37} On appeal, Appellant makes several unsupported allegations regarding Mentor Harbor's privacy efforts and obligations. However, Appellant does not challenge the trial court's analysis or its application of the governing law. Therefore, Appellant has not shown error.

{¶38} Appellant also contends that the Supreme Court of Ohio has recognized "false light" as a claim "under the invasion-of-privacy umbrella." Appellant did not characterize his breach-of-privacy claim as a false-light claim in his brief in opposition to summary judgment. "A party appealing a summary judgment ruling cannot advance new theories or raise new issues to secure reversal." *Alberini v. Raptis*, 2024-Ohio-6004, ¶ 20 (11th Dist.).

Case No. 2025-L-023

**{¶39}** Finally, Appellant contends that summary judgment was "premature" because "discovery was incomplete." In particular, Appellant speculates that Mentor Harbor's bylaws may support his assertions. However, the remedy for a party who must respond to a motion for summary judgment before the completion of adequate discovery is a motion under Civ.R. 56(F). *LG Mayfield LLC v. United States Liab. Ins. Group*, 2017-Ohio-1203, ¶ 17 (11th Dist.). That rule provides:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

**{¶40}** "A party who fails to seek relief pursuant to Civ.R. 56(F) does not preserve the issue for appeal." *LG Mayfield* at ¶ 17. A review of the docket indicates that Appellant did not file a Civ.R. 56(F) motion.

**{¶41}** Accordingly, Appellant's fifth assignment of error is without merit.

## Libel

**{¶42}** Appellant's sixth assignment of error states: "The Trial Court erred in dismissing Counts Two and Three (libel) of Plaintiff's Complaint in finding: 'Defendant has not directed the Court to any written material from Mr. Pettrey' (Dkt.82,p.4,mid)."

**{¶43}** In counts two and three, Appellant asserted claims for, respectively, libel per quod and libel per se. Libel is "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). Libel per se is "libel of itself, or upon

Case No. 2025-L-023

the face of a publication." *Becker v. Toulmin*, 165 Ohio St. 549, 556 (1956). Libel per quod is "libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one." *Id*. "To prevail on a libel claim, a plaintiff must prove five elements: '(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory *per se* or caused special harm to the plaintiff.'" *Jacobs v. Budak*, 2004-Ohio-522, ¶ 50 (11th Dist.), quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist. 1996).

{¶44} The trial court found as follows:

> The alleged defamatory statements in this case were made by Mr. Pettrey to Mr. Mack. As Defendant points out, those statements were made in a phone call. (M. Pettrey Deposition 18: 5-25.) *Defendant* [sic] *has not directed the Court to any written material from Mr. Pettrey*. Plaintiff's libel claim fails as a matter of law.

(Emphasis added.)

{¶45} Appellant contends that the trial court "possibly" meant to use the word "Plaintiff" instead of "Defendant" in the italicized sentence, to wit: "*Plaintiff* has not directed the Court to any written material from Mr. Pettrey." (Emphasis added.) Appellant argues that this statement constitutes reversible error because it "confused the parties."

{¶46} Appellant cites no legal authority in support of his "confusion" argument. Even if the trial court used the wrong word, however, Appellant has not shown resulting prejudice. *See* Civ.R. 61; *Spellman*, 2020-Ohio-3240, at ¶ 28 (11th Dist.). As stated, Appellant contends that he directed the trial court to "credible evidence of libel" by Pettrey. In particular, Appellant points to emails that Tom Mack from South Shore sent to him on January 9, 2023. Therein, Mack accused Appellant of lying and claimed to have

statements from "numerous witnesses" from Mentor Harbor. However, Mack's emails do not reproduce any of these alleged witness statements. Accordingly, the emails do not depict potentially libelous statements from Pettrey.

{¶47} Appellant's sixth assignment of error is without merit.

**Slander**

{¶48} Appellant's seventh assignment of error states: "The Trial Court erred in dismissing Count Four and Five (slander) of Plaintiff's Complaint in finding: 'Defendant has met its burden establishing that Mr. Pettrey's statement is an opinion.' (Dkt.82,p.5,bottom)."

{¶49} In counts four and five, Appellant asserted claims for, respectively, slander per se and slander, the latter of which the trial court characterized as slander per quod. "Oral defamation is referred to as slander." *Niotti-Soltesz v. Piotrowski*, 2017-Ohio-711, ¶ 12 (11th Dist.). "Slander per se occurs where the defamatory statements are injurious by their very meaning." *Straus v. Doe*, 2004-Ohio-5316, ¶ 27 (11th Dist.). "'In order for an oral defamatory remark to be considered slander per se it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation.'" *Id*. at ¶ 28, quoting *Hughes v. Fordeley*, 2000 WL 895593, *2 (11th Dist. June 30, 2000). "Where facts demonstrate that the slanderous statements meet these criteria, general damages and malice are presumed as a matter of law." *Id*. "Slander per quod, alternatively, involves a statement with an apparently innocent meaning which becomes defamatory via interpretation or innuendo." *Id*. at ¶ 27.

"A plaintiff must prove special damages to succeed on a claim for slander per quod." *Niotti-Soltesz* at ¶ 13.

**{¶50}** "Expressions of opinion are generally accorded absolute immunity from liability under the First Amendment" to the United States Constitution. *Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986). They are also protected under art. I, § 11 of the Ohio Constitution, *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280 (1995), which provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press." "The determination of whether an averred defamatory statement constitutes opinion or fact is a question of law." *Scott* at 250. "When determining whether speech is protected opinion a court must consider the totality of the circumstances." *Vail* at syllabus. "Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." *Id.*

**{¶51}** The trial court found, in relevant part:

> According to Mr. Pettrey, he stated the following to Mr. Mack regarding the Drain Plug Incident: "He had a little mishap where he forgot to put his drain plug in. The boat was sinking, and we - I helped him out, actually." (M. Pettrey Depo. 19: 19-22.) Mr. Pettrey's statement to Mr. Mack is consistent with his description of the incident, namely that [Appellant's] boat was taking water to a level that was becoming dangerous for the motor. (M. Pettrey Depo. 11: 2-13.) It is worth noting Mr. Mack called Mr. Pettrey to obtain information about [Appellant's] boat. (M. Pettry Depo. 18: 18-21.) There is no evidence that Mr. Pettrey reached out to Mr. Mack in an effort to disparage [Appellant].
>
> [Mentor Harbor] points out that [Appellant] does not dispute that he forgot to use the drain plug. (Plaintiff Depo. 26, 2-23; Plaintiff Aff. ¶ 24.) While he denies that his boat capsized, swamped, or sunk, he does not deny that the boat took water. (Plaintiff Deposition 55: 5-8, 78: 4-7.) [Appellant] claims Mr. Pettrey's statement contains "no truth" and is "false

Case No. 2025-L-023

and exaggerated." [Appellant] does not point to any evidence suggesting that Mr. Pettrey's statements were false and exaggerated. To the contrary, there is obviously some truth to Mr. Pettrey's statement, as [Appellant] does not deny the boat took water due to the lack of a drain plug.

Additionally, [Mentor Harbor] has met its burden in establishing that Mr. Pettrey's statement is an opinion. The difference between [Appellant's] and Mr. Pettrey's account is one of degree. There is no evidence before the Court that makes Mr. Pettrey's statement verifiable. When considering the context in which he made the statement, the Court is left to conclude that his statement was opinion as opposed to fact. The Court further finds the statement is not slanderous on its face.

{¶52} On appeal, Appellant argues that the trial court erred in finding that Pettrey's statement was an opinion. According to Appellant, the Supreme Court of Ohio in *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102 (1996), "emphasized that a statement, even if characterized as an opinion, must be evaluated in light of all the circumstances surrounding it. When a statement implies a set of observable facts known to both parties, it is intended to be factual." Appellant contends that Pettrey's "testimony was not mere conjecture or subjective expression but rather constituted a statement of fact, subject to factual evaluation by a trier of fact."

{¶53} *Grafton* does not stand for these propositions, nor did it even discuss the concepts of fact and opinion. As explained above, whether a statement is fact or opinion is a question of law for the court based on its consideration of the totality of circumstances. *Scott*, 25 Ohio St.3d at 250; *Vail*, 72 Ohio St.3d at syllabus. The trial court performed the required analysis and determined that Pettrey's statement was an opinion. Appellant has not shown that the trial court erred in that regard.

{¶54} Accordingly, Appellant's seventh assignment of error is without merit.

Case No. 2025-L-023

**Vicarious Liability**

{¶55} Appellant's eighth assignment of error states: "The Trial Court erred in dismissing Count Seven (vicarious liability) by basing its finding that: '…no action against Mr. Pettrey can be maintained' (Dkt.82,p.6,bottom) where the Court ignored the material conflict of interest on [sic] Commodore Pettrey in exercising his duties."

{¶56} In count seven, Appellant asserted a claim for vicarious liability. "Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior . . . ." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438 (1994). "This doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant) . . . ." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601, ¶ 20.

{¶57} The trial court found that Appellant "does not devote any specific argument to Count Seven." However, the trial court found that since Appellant could not maintain any action against Pettrey, there could be no liability against Mentor Harbor as a matter of law.

{¶58} On appeal, Appellant argues that Pettrey had a material conflict of interest and breached a fiduciary duty. According to Appellant, "[h]igh-ranking officers, like the Commodore, owe a fiduciary duty to Members, which logically includes a duty to protect confidential information." In support, Appellant cites *DiPasquale v. Costas*, 2010-Ohio-832 (2d Dist.), which he characterizes as an "Ohio Supreme Court" case involving "the duties of high ranking officers of an Ohio not-for-profit."

{¶59} Appellant does not cite any evidence or authority in support of his allegations regarding the duties of a commodore. Appellant also does not explain how

Case No. 2025-L-023

his theory of individual liability against Pettrey supposedly establishes Mentor Harbor's vicarious liability. Further, Appellant did not make this argument in opposition to summary judgment. *See Alberini*, 2024-Ohio-6004, at ¶ 20 (11th Dist.).

{¶60} Accordingly, Appellant's eighth assignment of error is without merit.

**Negligence**

{¶61} Appellant's ninth assignment of error states: "The Trial Court erred in dismissing Count Eight (negligence) in finding: 'Plaintiff has not met his reciprocal burden in showing a genuine issue of fact for trial' (Dkt.82,p.7)."

{¶62} In count eight, Appellant asserted a negligence claim. "To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "The existence of a duty in a negligence action is a question of law for the court to determine." *Id*. The trial court found, in relevant part:

> [Mentor Harbor] argues it has no duty to safeguard the Drain Plug Incident. [Appellant] has pointed to no evidence in the record suggesting [Mentor Harbor] has such a duty. [Appellant] instead shifts his argument in his opposition to the motion for summary judgment to claim that [Mentor Harbor] acted negligently in launching the boat. Regardless of his theory, [Appellant] has not met his reciprocal burden in showing a genuine issue of fact for trial.

{¶63} On appeal, Appellant argues that "[a] Member of a private yacht club should be able to rely on the faithful performance of duties by the Commodore." Appellant does not cite any evidence or authority in support of this assertion, nor did he make this argument below. *See Alberini*, 2024-Ohio-6004, at ¶ 20 (11th Dist.).

{¶64} Accordingly, Appellant's ninth assignment of error is without merit.

Case No. 2025-L-023

**Intentional Infliction of Emotional Distress**

{¶65} Appellant's tenth assignment of error states: "The Trial Court erred in dismissing Count Six (Infliction of Emotional Distress) of the Complaint by finding: 'the Court would be hard pressed to find that Pettrey's statement to Mr. Mack was extreme and outrageous, given that at least part of it is true.' (Dkt.82, p.6, bottom 2d para.)."

{¶66} In count six, Appellant asserted a claim for intentional infliction of emotional distress. To establish such a claim, "a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994).

{¶67} The trial court found that Appellant submitted no evidence indicating that he suffered serious emotional distress. Alternatively, the trial court found that it "would be hard pressed" to find that Pettrey's statement to Mack was extreme and outrageous, "given that at least part of it is true."

{¶68} On appeal, Appellant challenges the trial court's alternative finding regarding "extreme and outrageous" conduct. He does not challenge the trial court's finding regarding "serious emotional distress." A plaintiff must produce evidence raising a genuine issue of material fact as to *each element* of intentional infliction of emotional distress. *Sumlin v. Nationwide Mut. Ins. Co.*, 1998 WL 63540, *6 (10th Dist. Feb. 10, 1998). Therefore, any potential error regarding the trial court's alternative finding is harmless.

{¶69} Appellant's tenth assignment of error is without merit.

Case No. 2025-L-023

{¶70} In sum, Appellant has not established reversible error regarding the trial court's granting of Mentor Harbor's motion for summary judgment.

**Cross-Assignments of Error**

{¶71} Finally, Mentor Harbor raises two cross-assignments of error requesting affirmance on other grounds. Since we have overruled Appellant's assignments of error, Mentor Harbor's two cross-assignments of error are overruled as moot.

{¶72} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2025-L-023

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against Appellant.

JUDGE JOHN J. EKLUND

JUDGE EUGENE A. LUCCI,
concurs

JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-023